UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 09-22849-CV-LENARD/TURNOFF

EDUARDO LINAN, as Personal Representative,
of the Estate of Linda Linan, deceased,

    Plaintiff,
v.

CARNIVAL CORPORATION, a foreign corporation,
d/b/a CARNIVAL CRUISE LINES, and BEL-CRUISE,
a Belizean entity,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Judicial Notice **[D.E. 48]** and an Order of Referral **[D.F. 69]** entered by the Honorable Joan A. Lenard on March 25, 2010. A hearing on the Motion **[D.E. 48]** took place before the undersigned on Monday, April 19, 2010.

Upon review of the Motion **[D.E. 48]**, the Response, the court file, hearing argument from counsel, and being otherwise duly advised in the premises, the undersigned makes the following findings.

### Background

This case was filed by Plaintiff Eduardo Linan, as Personal Representative of the Estate of Linda Linan. See Am. Compl. **[D.E. 10, ¶ 22]**. The action arises from an accident that occurred on, or about September 2008 – while Plaintiff and his wife, Linda, were on vacation in the course of a week-long cruise on Carnival's M/V Carnival Glory. Id. At the time of the accident, Plaintiff and his wife were on a shore excursion that was offered by Defendant Carnival, and operated by Defendant Bel-Cruise Co., Ltd. ("Bel-Cruise"). Id. ¶ 33. The excursion, "Cave Tubing and Jungle

Exploration," offered passengers a trip to a remote area of Belize where a body of water flows mainly underground through dark and narrow caves. Id.

The Amended Complaint alleges, *inter alia*, that the passengers (including Plaintiff and his wife) were allowed to "free-float" through pitch-dark caves into dangerous areas without proper supervision or guidance. Id. ¶ 61. According to Plaintiff, "panic-stricken bedlam ensued" when many of the passengers began crashing into each other in the dark caves. Id. ¶62. The result was that Plaintiff and his wife were sucked into a whirlpool, which resulted in Mrs. Linan's death by traumatic impact with the cave structure and/or drowning. Id.

This action followed one year later on September 23, 2009. [D.E. 1].

## Analysis

Plaintiff filed the instant Motion for Judicial Notice [D.E. 48] on March 3, 2010. Same was referred to the undersigned on March 31, 2010. [D.E. 69]. In the Motion [D.E. 48], Plaintiff requests that the Court take Judicial Notice of certain documents (marked as Exhibits 1-40). See App. [D.E. 38] (attachments to Plaintiff's Response [D.E. 33] to Defendant Carnival's Motion to Dismiss Amended Complaint [D.E. 21]).

Exhibit Nos. 1-31 and 36 are Congressional instruments (bills, reports, and hearings) that comprise the legislative history of the Death on the High Seas Act, 46 U.S.C. §§ 761-67 (1920) ("DOHSA"). Exhibit Nos. 32 and 37 are federal statutes. Exhibit Nos. 33-34 are treaties ratified by the United States. Exhibit No. 35 is the Belize Maritime Areas Act. Exhibit No. 36 is an additional bill in DOHSA's legislative history. Exhibit No. 38 is the Florida Wrongful Death Act. Exhibit No. 39 is a Harvard Law Review article and Exhibit 40 is a Louisiana Law Review article.

In support of the Motion [D.E. 48], Plaintiff argues that courts routinely take judicial

notice of statutory legislative history, and that the public acts and proclamations of governments in carrying into effect treaties are historical and notorious facts of which a court can take regular judicial notice. See e.g., U.S. v. Reynes, 50 U.S. 127, 147-148 (1850). Defendant Carnival opposes the Motion.

Carnival, on the other hand, argues that judicial notice of the requested items is inappropriate and premature under both Fed.R.Evid. 201 and the relevant case law. Carnival further argues that DOHSA's legislative history has nothing to do with the parties in this case, their activities, properties or businesses. Carnival concedes that there *may* be circumstances where it is appropriate for a court to *consider* a statute's legislative history when deciding questions of law. However, in Carnival's view, it is inappropriate for a court to treat facts contained in the legislative history as conclusively proven by taking judicial notice of same. The undersigned agrees.

Rule 201, Federal Rules of Evidence states in relevant part,

(a) **Scope of rule**. This rule governs *only* judicial notice of adjudicative facts.

(b) **Kinds of facts**. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

Fed.R.Evid. 201(a)(b)(emphasis added).

Adjudicative facts are facts that pertain to the parties and their activities, properties and businesses. See Qualley v. Clo-Tex Int'l, Inc., 212 F. 3d 1123 (8th Cir. 2000). The Rule's advisory committee notes provide some guidance by distinguishing between adjudicative facts and legislative facts. Adjudicative facts are those which relate to the parties or, stated in other terms, the adjudicative facts are those to which the law is applied in the process of adjudication. They are the

3

facts that normally go to the jury. Typically, they relate to the parties, their activities, their properties, and their businesses. See Fed.R.Evid. 201, (avd. ctte. notes (citing 2 Kenneth Davis, Administrative Law Treatise at 353 (1958)).

By contrast, "[l]egislative facts do not relate specifically to the activities or characteristics of the litigants. A court generally relies upon legislative facts when it purports to develop a particular law or policy and thus considers material wholly unrelated to the activities of the parties." Qualley v. Clo-Tex Int'l.,Inc.,212 F. 3d 1123, 1128 (8th Cir. 2000)(quoting Gould, 536 F. 2d at 220)(finding that judicial notice of certain Nigerian fraud scams based upon Congressional reports and newspaper articles was "legislative" in nature and outside the scope of Rule 201). Interestingly, at the hearing, Plaintiff conceded that: (1) Rule 201 applies herein, and (2) that the documents at issue constitute legislative facts.

The two main cases cited by Plaintiff likewise lend little to support the relief requested.

To illustrate, Territory of Alaska v. American Can Company, 358 U.S. 224, 226-227 (1959) was an action by Alaska – then a territory– to collect property taxes that had accrued before the 1953 repeal of a 1949 property tax statute. Id. at 225. Alaska filed suit to collect taxes owing for the years 1949-1952. The district court granted a motion to dismiss holding that no liability for said taxes had survived the repeal. Id. The appellate court affirmed. Id. The United States Supreme Court reversed and remanded, finding that the 1953 statute did not wipe out liability for taxes that had accrued prior to the date of the repeal. Id.

In furtherance of same, the Court took judicial notice of the bill's legislative history and noted that while the original bill, as introduced, "cancelled, repealed and abrogated, and declared null and void" "all accrued and unpaid taxes" under the 1949 Act," said provision was later deleted

by a House Committee, and never became part of the law. Id. The Alaska court was in a sense "developing the law" as discussed in the more recent Qualley case. No such circumstances exist in the case at hand. Here, at most, Plaintiff is seeking to *apply* DOHSA, not question its scope.

Plaintiff's reliance on U.S. v. Reynes, 50 U.S. 127, 147 (1850) is equally misplaced. At issue in that case was the validity of an 1804 purchase and/or conveyance of certain land in Louisiana. Plaintiff relies on the following *dicta* by the Court,

> The treaties mentioned . . , the public acts and the proclamations of the Spanish and French governments and those of their publicly recognized agents, in carrying into effect those treaties, though not made exhibits in this cause, are historical and notorious facts, of which the court can take regular judicial notice; and reference to which is implied in the investigation before us.

Id. at 148.

The Reynes Court, like the Alaska Court, was "developing the law." In the case of Reynes, it was doing so in what was then a newly evolving country whose very land boundaries were just then being determined. No similar circumstances exist here. Of equal importance, both cases predate the enactment of the Federal Rules of Evidence;[1] and more specifically Rule 201.

Consistent with the above and foregoing, the undersigned finds that the Motion **[D.E. 48]** is premature and inappropriate at this time. These matters may be raised at a later time by way of an appropriate motion for a determination that DOHSA applies and/or a subsequent instruction to the jury. Accordingly, it is hereby **RESPECTFULLY RECOMMENDED** that the Motion **[D.E. 48]** be **DENIED** as to DOHSA (Ex. 1-31 & 36), its legislative history and related documents.

---

[1] In 1961, an advisory committee was appointed to study the advisability and feasibility of uniform rules of evidence for use in the federal courts. See Rules of Evidence, P.L. 93-595, H.R. REP. 93-650. For years, the committee circulated reports, preliminary drafts, and proposed rules. It was not until 1974 that the bill was actually passed. Id.

Further, in the case of the Belize Maritime Areas Act (Exh. 35), Fed.R.Civ.P. 44.1 requires that a party who intends to raise an issue of foreign law must give notice by a pleading or other writing. See Fed.R.Civ.P. 44.1 (adv. ctte. notes). The advisory committee notes specifically indicate that the new rule refrains from imposing an obligation on the court to take judicial notice of foreign law, because it would put an extreme burden on the court in many cases. Id. Indeed, it avoids use of the concept of judicial notice in any form because of its uncertain meaning as applied to foreign law. See id. (citing, Stern, Foreign Law in the Courts: Judicial Notice and Proof, 45 Calif. L.R. 23, 43(1957). Here, the currently operative pleading – the Amended Complaint – makes no reference to the Belize Maritime Areas Act. Further, the supplemental submission of the Affidavit of a Belizean attorney does not appear to satisfy the Rule. Consistent with the above, it is likewise **RESPECTFULLY RECOMMENDED** that the Motion be **DENIED** as to **Exh. No. 35**.

For the reasons noted *supra*, and consistent with Fed.R.Evid. 201, it is hereby **RESPECTFULLY RECOMMENDED** that the Motion **[D.E. 48]** be likewise **DENIED** as to Exhibit Nos. 32 & 37 (federal statutes), Exhibit Nos. 33-34 (treaties ratified by the United States), Exhibit No. 38 (Florida's Wrongful Death Act), Exhibit No. 39 (Harvard Law Review article) and Exhibit 40 (Louisiana Law Review article).

Pursuant to 28 U.S.C. § 636(b)(1)(c), the parties may file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Court, within fourteen (14) days of receipt. Failure to file objections timely shall bar the parties from attacking on appeal any factual findings contained herein. RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, reh'g denied, 7 F. 3d 242 (11th Cir. 1993) (*en banc*); LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida on this 21st day of April 2010.

_____
**WILLIAM C. TURNOFF**
**UNITED STATES MAGISTRATE JUDGE**

cc:   Hon. Joan A. Lenard
      Counsel of Record